FERRELL *v.* DOAK *et al.*\*

(*Nashville.*   December Term, 1924.)

**TAXATION.** Act authorizing taxes to promote a private box factory
held unconstitutional as not for a ''public use.''

Private Acts 1925, chapter 189, authorizing expenditure of public
funds to constitute a tax against municipality for purchase of a
box factory to be leased to a private corporation, is in violation of
Constitution, article 2, section 29, limiting taxes for public purposes
only; such expenditure not being for a "public use" which re-
quires the accrual of a continued use for the public and a reason-
able degree of public control.

Acts cited and construed: Acts 1925, ch. 189.

Cases cited and approved: Ryan v. Terminal Co., 102 Tenn., 111;
Phosphate Co. v. Phosphate Co., 120 Tenn., 260; City of Memphis v.
Memphis Gayoso Gas Co., 56 Tenn., 531; Hill v. Roberts, 142 Tenn.,
215; State ex rel. v. City of Memphis, 147 Tenn., 658; Green v.
Frazier, 253 U. S., 233; Jones v. Portland, 245 U. S., 217; Loan As-
sociation v. Topeka, 20 Wall., 655; Commercial Nat. Bank v. City
of Iola, 2 Dill. 353; Cole v. City of La Grange, 19F., 871; McConnell
v. Hamm, 16 Kan., 228; C. B. U. P. R. Co. v. Smith, 23 Kan., 745;
Opinion of Judges, 58 Me., 590; Allen v. Inhabitants of Jay, 60 Me.,
124; Weismer v. Village of Douglas, 64 N. Y., 91.

Cases cited and distinguished: Cleveland Nat. Bank v. Iola, 9 Kan.,
689; Zigler v. Menges, 121 Ind., 99.

Constitution cited and construed: Art. 2, sec. 29.

\*Headnote 1.   Taxation, 37 Cyc., pp. 720, 722.

FROM WILSON.

Appeal from the Chancery Court of Wilson County. —Hon. J. W. Stout, Judge.

A. A. Adams, Jr., for complainant.

Louis Chambers, for intervening petitioners.

L. H. Walker and Wm. Green, for defendants.

Thomas H. Malone and O. K. Holladay, *amici curiae*, for appellant.

Mr. Justice Chambliss delivered the opinion of the Court.

This appeal is from a decree holding unconstitutional chapter 189 of the Private Acts of 1925, empowering the town of Lebanon to issue bonds to be used in the promotion of industrial enterprises to be located within its borders. The bill sought to enjoin proposed proceedings under said act by which $36,000 of such funds, to constitute a tax charge against the municipality, were to be expended in the purchase of a factory site and the erection thereon of buildings suitable for a box manufacturing plant, to be leased at an annual rental of $1,800 to a private corporation. The right to extend the public aid thus to be granted to this private enterprise as an inducement to its location and operation in Lebanon is sought to be justified upon the theory that the public welfare of the community would be contributed to by a consequent increase in population, the erection of additional tax yielding homes, increased consumption of light, water, and power, for which the municipality would

receive compensation, etc.   However commendable the proposed movement, it must be and is frankly conceded that public funds to be provided by taxation may be expended only for a public purpose, and, unless the purpose in view may be reasonably so classified, the act conflicts with article 2, section 29, of our constitution.   By this section the General Assembly is empowered to authorize incorporated towns to impose taxes for corporation purposes only.   Is the proposed purpose a corporation; that is, a public purpose?

It is frequently said and generally recognized that it is not easy to define with accuracy a public purpose.   The analogous question as to what is a public use, likewise difficult of precise definition, has frequently arisen in determining limitations upon the right of eminent domain, and authorities dealing with this subject have application.   Leading cases in this court, discussing what constitutes a public use, are *Ryan* v. *Terminal Co.*, 102 Tenn., 111, 50 S. W., 744, 45 L. R. A., 303, and *Phosphate Co.* v. *Phosphate Co.*, 120 Tenn., 260, 113 S. W., 410, 22 L. R. A. (N. S.), 701.   It is recognized in these cases that the right exercised must be for a public use, not only in the sense that the public in general will be benefited, but that a continuing or fixed use will accrue to the public, including a reasonable degree of regulation or control, independent of the will of the private party who is the beneficiary of this exercise of sovereign power.

The exact question here presented has not been directly dealt with by this court heretofore.   Learned counsel for appellant cite, as tending to support their insistence, *City of Memphis* v. *Memphis Gayoso Gas Co.*, 9 Heisk., 531; *Hill* v. *Roberts*, 142 Tenn.. 215, 217 S. W.,

826, and *State ex rel.* v. *City of Memphis,* 147 Tenn., 658, 251 S. W., 46, 27 A. L. R., 1257. The first of these cases dealt with the right of a municipality to assist in the promotion of a gas company by a subscription for stock. Water, light, and heat are such generally recognized necessities for the preservation of public health and safety that the right to apply public funds for such purposes has come to be universally conceded. Not only does the holding in that case not support the instant act, but in the course of the opinion in that case attention is called to the fact that gas is in a different class with respect to public convenience and necessity from manufactured articles generally, such as ''cotton and woolen goods,'' and the court might well have added manufactured boxes, as contemplated in the instant case.

Nor is *Hill* v. *Roberts,* supra, in point. Bounties to soldiers who have served the State in time of war, and memorials in their honor, tending to sustain patriotism, have long been recognized as public purposes. Indeed, they have no private attributes. The recent case of *State ex rel.* v. *City of Memphis* also seems to us to be not controlling. This court in that case quite properly held the application of public funds by the city of Memphis to the payment of insurance for the employees of one of the city departments to be an expenditure for a public purpose. The opinion in that case clearly sets forth the reasons why this expenditure, in effect an addition to the compensation of these city employees, would tend to increase the efficiency of the public service and provide against dependency. We are unable, however, to see that the approval therein given of the expenditure of public funds is authority for the contention herein

Ferrell v. Doak.

made, that public funds may be used to promote purely private enterprises with the hope that the public at large will derive incidental benefits therefrom. A distinction recognized by our courts in the eminent domain cases which called for a reservation in the public of a reasonable degree of control of the enterprise is applicable, and is here wholly wanting. For example, the proposed box factory will be privately owned and controlled so that, in the wages to be paid, the sale of its products and the prices to be fixed therefor, the earnings to be withdrawn by the private owners, and all other matters of management, including continuance of operation, or disposition of the business, the public will have no voice. Such contribution as will have been made from public funds in promotion of the business will be wholly unrepresented in the management and nonparticipant in the profits. Herein is suggested a distinction which runs through many of the cases in which the courts have sustained as a public purpose enterprises instituted, or fostered, by the State, or one of its arms. While not a taking of stock in, or a direct donation to, a private enterprise, the element of inducement proposed to be given the enterprise to induce its location in Lebanon is absent, unless it be conceded that the concessions proposed constitute a material contribution, and this cannot be construed otherwise than as a donation to this extent of public funds in promotion of a private enterprise for profit. Under the plan proposed, the public furnishes the physical plant for a comparatively small consideration. The difference between an adequate return and the rental proposed to be paid constitutes the inducement and the contribution to the enterprise.

Counsel have cited *Green* v. *Frazier,* 253 U. S., 233, — S. C., 499, 64 L. Ed., 878, and *Jones* v. *Portland,* 245 U. S., 217, 38 S. Ct., 112, 62 L. Ed., 252, L. R. A., 1918C, 765, Ann. Cas., 1918E, 660, and a number of State de- cisions as supporting in greater or less degree the valid- ity of the act now before us. Certain provisions of the North Dakota series of acts referred in *Green* v. *Frazier,* supra, particularly the Home Building Act, bear some analogy to the act involved in the instant case. But not only did this legislation go to extreme limits, as plainly recognized by the supreme court of the United States, but the distinction hereinbefore noted finds application; that is to say, in the establishment and operation of the various enterprises provided for by the North Dakota acts, control is reserved in the public, which administers the affairs of business contemplated primarily for the public benefit and not for private profit. This important element of public use, or purpose, is therefore preserved. This may also be said of all the cases to which our atten- tion has been called by counsel as illustrating the exten- sion of the doctrine of public purpose. As bearing di- rectly upon the plan provided for by the act under con- sideration, we quote with approval the following para- graphs from Ruling Case Law:

"The promotion of the interests of individuals, either in respect of property or business, although it may re- sult incidentally in the advancement of the public wel- fare, is, in its essential character, a private and not a public object. However certain and great the resulting good to the general public, it does not, by reason of its comparative importance, cease to be incidental. The incidental advantage to the public, or to the State, which

results from the promotion of private interests, and the prosperity of private enterprises or business, does not justify their aid by the use of public money raised by taxation, or for which taxation may become necessary.'' Volume 26, p. 46.

''It is well settled that money raised by taxation cannot be lawfully expended to contribute aid to any kind of manufacture carried on by a private individual or corporation for profit and not under obligation to serve the public, even if the establishment of a factory will be of indirect benefit to the people of a city or town which is for that reason desirous of making the contribution.'' Volume 26, p. 59.

''Cases have occasionally arisen in which citizens of a town, anxious to induce manufacturing enterprises to locate their structures within its limits on account of the enhancement of the property of the community that it is expected will follow, have obtained authority from the legislature to grant promoters of the corporation financial aid from the funds of the town on condition that they will establish their enterprise within the limits of the town. It is well settled, however, that it is not within the power of a constitutional government to expend the public funds in order to enable an individual to cultivate his land or to carry on his business to better advantage, on account of the incidental enhancement of the property of the community that will result from his success, and that his fields are large or his business extensive does not affect the character of his enterprise. It is still private and not public. It is accordingly held that a municipal corporation cannot constitutionally be authorized by the legislature to expend its funds in behalf of a pri-

vate manufacturing enterprise. It can make no difference in what form the aid is sought to be given. If the municipality issues its bonds for the desired amount and turns them over to the favored manufacturer, as the bonds must be met by taxation when they become due, the act which authorizes their issue necessarily has provided for taxation for a private purpose and the bonds are absolutely void. A statute authorizing a municipality to subscribe to the stock of a manufacturing corporation is equally objectionable, and it has even been held that the remission of a tax by a vote of a town is in authorizing it is void." Volume 19, p. 710. This text is supported by authorities cited.

This text is supported by authorities cited.

So under the general head of taxation, it is said in 37 Cyc., p. 722, that—"The power of taxation is perverted when used for the benefit or advantage of any private individual, or for the support of private business, or manufacturing enterprises."

In a note it is said: "The distinction which has been made in favor of taxation in aid of railroads on the ground that, although owned by private corporations, they are of a public character, for public use and subject to public regulation and control, is said to be going 'quite to the verge of legislative authority,' and the principle does not authorize taxation in aid of a manufacturing establishment or other enterprise of an essential private character." *Cleveland Nat. Bank* v. *Iola,* 9 Kan., 689, 701.

To the same effect see 2 Morawetz on Corp. (2d Ed.), 1047, and Dillon's Municipal Corp. (4th Ed.), section 12.

A very full and interesting discussion of the question as to what purposes justify imposition of taxes will be

found in an exhaustive note following the case of *Zigler* v. *Menges,* 121 Ind., 99, 72 N. E., 782, in Vol. 16, Am. St. Rep., beginning on page 365. Many illustrations are given of public purposes, and, on the other hand, illustrations are given of those subjects which may not lawfully be so classified. Under the latter head it is said to be—"well settled that taxation cannot be imposed for the purpose of establishing, aiding, or maintaining private business enterprises whose sole object is the private emolument of the proprietors, no matter how beneficial to the community such enterprises may be: Cooley on Taxation (2d Ed.), 126; *Loan Ass'n* v. *Topeka,* 20 Wall., 655 [22 L. Ed., 455]; *Commercial Nat Bank* v. *City of Iola,* 2 Dill., 353 [Fed. Cas., No. 3061]; *Cole* v. *City of La Grange* [C. C.], 19 Fed. Rep., 871; *McConnell* v. *Hamm,* 16 Kan., 228; *C. B. U. P. R. Co.* v. *Smith,* 23 Kan. 745; *Opinion of Judges,* 58 Me, 590; *Allen* v. *Inhabitants of Jay,* 60 Me., 124, 11 Am. Rep., 185; *Weismer* v. *Village of Douglas,* 64 N. Y., 91, 21 Am. Rep., 586."

The last case above cited, opinion by Judge FOLGER of the New York court of appeals, is an exceptionally clear and interesting discussion of the question involved. Without further reviewing this and other cases, it is sufficient to say that they fully support the text above quoted from Ruling Case Law, and appear to us to be conclusive against the constitutionality of the act under consideration.

The decree of the chancellor must be affirmed.